UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| STEWART TITLE GUARANTY COMPANY, § | | |
| § | | |
| Plaintiff, § | | |
| VS. § | CIVIL ACTION NO. 4:12-CV-3269 | |
| § | | |
| STEWART TITLE LATIN AMERICA, INC., § | | |
| *et al*, § | | |
| § | | |
| Defendants. § | | |

## OPINION AND ORDER

Pending before the Court is the Rule 12(b)(6) Motion to Dismiss First Amended Counterclaim[1] (Doc. 23) filed by Counter-Defendant Stewart Title Guaranty Company ("STGC") and Third-Party Defendants Stewart Title Company (STC), Michael B. Skalka, and Charles M. Craig (collectively, "Counter-Defendants"). Counter-Defendants move alternatively for a Rule 12(e) motion for more definite statement. Doc. 23. Having considered the motion, the facts of the case, and the applicable law, the Court concludes that the motions should be granted in part and denied in part.

I.   Background

On October 10, 2012, STGC filed its Original Petition (Doc. 1-2) in the 215th Judicial District Court of Harris County, Texas, seeking (i) a declaration of its legal rights concerning Defendants' and Counter-Plaintiffs'[2] allegedly unauthorized use of STGC's trademarks and

---

[1] Pursuant to Federal Rule of Civil Procedure 10(c), Counter-Defendants incorporate by reference their first Rule 12(b)(6) Motion to Dismiss and Rule 12(e) Motion for More Definite Statement (Doc. 13) and their Reply (Doc. 20) in support of that motion. Other directly relevant filings include the following:
- Counter-Plaintiffs' Response to Counter-Defendants' Motion to Dismiss (Doc. 28)
- Counter-Defendants' Reply in Support of Their Rule 12(b)(6) Motion to Dismiss (Doc. 30)
- Counter-Plaintiffs' Sur-Reply to Counter-Defendants' Reply in Support of Motion to Dismiss (Doc. 33)
- 

[2] Counter-Plaintiffs include: Stewart Title Latin America, Inc., Stewart Latin America, S.A. de C. V., Stewart Title

name and (ii) damages arising from Defendants' and Counter-Plaintiffs' alleged failure to pay premiums and post-termination use of STGC's trademarks and name.  On November 5, 2012, Defendants and Counter-Plaintiffs removed the action to this Court, (Notice of Removal, Doc. 1), and, on November 13, 2012, they filed their Answer, Counterclaim, and Third Party Complaint (Doc. 3).  Counter-Plaintiffs stated the following six counterclaims: breach of contract (Joint Venture Agreement); breach of contract (Underwriting Agreements); promissory estoppel; business disparagement; breach of fiduciary duty; and conspiracy to breach fiduciary duty.  (Doc. 3 ¶¶ 104-30).  On December 31, 2012, Counter-Defendants filed their first Rule 12(b)(6) Motion to Dismiss and Alternative 12(e) Motion for More Definite Statement (Doc. 13); on January 21, 2013, Counter-Plaintiffs responded by filing their First Amended Counterclaim and Third Party Complaint (Doc. 17), stating the same six counterclaims and adding additional factual details.

Counter-Defendants then filed their second Rule 12(b)(6) Motion to Dismiss and Alternative Rule 12(e) Motion for More Definite Statement, which is pending before the Court and is now ripe for adjudication.  Unlike the first motion, the second motion addressed specifically the dismissal of only three of Counter-Plaintiffs' six counterclaims: those for (i) breach of the Joint Venture Agreement based only on the alleged perpetual license; (ii) business disparagement; and (iii) promissory estoppel.  Doc. 23 ¶ 7.  Counter-Defendants did, however, incorporate their first Rule 12(b)(6) Motion (Doc. 13) to dismiss all claims by reference under Rule 10(c).  Doc. 23 ¶ 6.  The Counter-Plaintiffs' Response noted that the Counter-Defendants no longer sought dismissal of the other three counterclaims and claims for breaches of the Joint Venture Agreement apart from the breach based on the perpetual license.  Doc. 28 at 2 n.1.

---

Baja, S.A. de C. V., Stewart Title Dominicana, S.A., Stewart Title Eastern Caribbean, Ltd. d/b/a Stewart Title Eastern Caribbean, Inc., Stewart Title Guadalajara, S.A. de C.V., Stewart Title Los Cabos, S.A. de C.V., Stewart Title Puerto Peñasco, S.A. de C.V., Stewart Title Riviera Maya, S.A. de C.V., and Stewart Costa Rica ABC, S.A.

Counter-Defendants' reply (Doc. 30) did not correct the assumption, and continued to focus their arguments on the same three counterclaims discussed in the second motion to dismiss. As such, the Court assumes that Counter-Defendants seek to dismiss only the three counterclaims which were the focus of Counter-Defendants' second motion to dismiss, and considers here only those counterclaims.

The facts of this case are extensive and quite complex. The business relationships among the over one dozen parties go back over fifteen years and involve a number of contracts. For simplicity, the Court's analysis will focus on the facts implicated in the three counterclaims which are the subject of Counter-Defendants' motion.

On December 5, 2001, Stewart Information International, Inc. (SII), the predecessor of STC, entered into a contract for the formation of Counter-Plaintiff Stewart Title Latin America, Inc. (STLA) (the "Joint Venture Agreement" or the "Agreement"). Doc. 17 ¶ 14; Stewart Title Latin America, Inc. Holding Company Formation Agreement, Doc. 13-1, Ex. A. The other parties to the Agreement to form STLA were (1) Corporation Abacus de San Jose, S. A.,(2) Siglo XXI, S. A., (3) Corporacion Banex, S.A. and (4) Christopher Dennis Hill. The Agreement provided that STLA and its subsidiaries would "develop, implement, and provide to consumers, commercial entities and governmental entities real estate title information, issuance of insurance or guaranty…, and escrow and closing services" in a defined territory including some Central, South American, and Caribbean countries. Doc. 13-1 ¶ II. The Agreement did not cover the United Mexican States. The Joint Venture Agreement gave SII a 20 percent stake in STLA. Doc. 13-1 ¶ III.

Although STGC was not a party to the Joint Venture Agreement, STLA argues that SII acted as STGC's agent in entering all contracts related to STLA and its subsidiaries, and that SII

acted within the scope of its agency when it executed the Joint Venture Agreement and the subsequent amendment to the Joint Venture Amendment[3]. Doc. 17 ¶ 15; 76. The Joint Venture Agreement contains a choice of law provision which states that it "shall be governed by and construed in accordance with the laws of the British Virgin Islands, without reference to any conflict of law rules." Doc. 13-1 ¶ XXVI.

With regard to the trademarks that are at issue in this case, the Joint Venture Agreement provided:

> "The Parties hereto hereby acknowledge:
>
> A. That the name, trademark, and service mark "Stewart Title," exclusively belongs to [STGC];
>
> B. That the use of name, trademark, and service mark "Stewart Title" in [STLA]'s corporate or assumed name is only an non-exclusive license granted to [STLA] by [STGC] by virtue of a separate exclusive Underwriting Agreement to be entered into by and between [STLA] and [STGC] concurrently herewith;
>
> C. Use and appearance of any [STGC] trademark to be used by [STLA] shall be subject to [STGC]'s complete and final approval and at [STGC]'s sole discretion." Doc. 13-1¶ IX.

The Joint Venture Agreement provided that it would terminate upon (1) written agreement of the Parties; (2) bankruptcy, receivership, dissolution, or insolvency of STLA, or cessation of its business; or (3) the effective date of any registration statement filed with the Securities and Exchange Commission of the United States. Doc. 13-1¶ XVI.

On January 3, 2005, the parties to the Joint Venture Agreement entered into the First Addendum (the "Addendum"), which amended the Agreement. Doc. 17 ¶ 14. The Addendum provides in pertinent part:

---

[3] Throughout their briefing on the motion to dismiss the Counter-Plaintiffs refer to the Stewart Title counter-defendant entities as "STC/STGC." The Counter-Plaintiffs treat them as a single entity. .

> "during the term of this AGREEMENT, STLA shall enter into a . . . License Agreement with STGC to use the "Stewart" name in the territory of Mexico and shall abide by the terms contained therein." Doc. 30-1 ¶ at 3.

> "…due to the fact that (i) [STGC] has granted [STLA] and its subsidiaries the unrestricted and perpetual right to use the Stewart trademark and trade name, in all of the countries of the TERRITORY and (ii) that the parties have agreed that Stewart Title Latin American will be the vehicle that the partners will use to expand in the TERRITORY, the shareholder's agree that due to such valuable consideration" SII's stake in STLA shall be increased from 20 percent to 30 percent. Doc. 30-1 ¶ 4.

STLA claims that without the security of the "unrestricted and perpetual" right to use the Stewart name and trademark, STLA would not have invested millions of dollars in developing its business in the United Mexican States. Doc. 17 ¶ 26. The separate Non-Exclusive License Agreement to which it is assumed the Addendum refers was executed between STGC and "Stewart Title Latin America, S.A. de C.V. a variable stock corporation, duly organized and existing under the laws of the United Mexican States. . . ." on February 2, 2005, a bit over a month after the execution of the Addendum. Doc. 30-1, Ex. A.

This Non-Exclusive License Agreement, referred to as the "AGREEMENT" granted STLA the right to use the Stewart name and trademark, consistent with the terms of the Joint Venture Agreement and states, "this AGREEMENT shall be in full force and effect perpetually, so long as [STLA] complies with the terms and conditions stated in this AGREEMENT, unless otherwise agreed to in writing by both parties, and subject to [STGC]'s right to revoke the AGREEMENT sooner in accordance with the terms and provisions hereof." Doc. 30-1 ¶ 2. The Non-Exclusive License Agreement provides (1) it "constitutes the entire agreement of the Parties and supersedes all prior contracts or agreements, whether oral or written" and (2) that Texas law governs the agreement." Doc. 30-1 ¶ 18-19.

Sometime after the parties entered into these several agreements, the relationship between STGC and STLA soured. According to the allegations of Counter-Plaintiffs, STGC and STC executives felt that they would be harmed financially if STLA became STGC's marketing and business development arm in the United Mexican States, as the Addendum to the Joint Venture Agreement envisioned. Doc. 17 ¶ 30. Counter-Plaintiffs claim that two executives in particular, Third-Party Defendants Michael Skalka and Charles Craig, actively worked to sabotage STLA's operations by disparaging STLA in the market and using confidential information gained through their service on STLA's Board to compete unfairly with STLA. Doc. 17 ¶ 31.

Counter-Plaintiffs also claim that Mitch Creekmore, STGC and STC's Senior Vice President with responsibilities over the United Mexican States, disparaged STLA in order to procure business for STGC and STC. Doc. 17 ¶ 37. According to Counter-Plaintiffs, Creekmore allegedly told potential STLA customers, including brokers at Sotheby's International Realty, and professional organizations, such as the AMPI real estate chamber in Los Cabos, Mexico, that STLA was not the "real" Stewart, that STLA and its subsidiaries were not affiliated with STGC or STC, that STLA does not have "real escrow" accounts for customers transactions in Mexico, that funds held by STLA were not guaranteed, that STLA was in a precarious financial position, and that using STLA's escrow services was too risky. Doc. 17 ¶ 37.

Counter-Plaintiffs cite to one example of disparagement in particular, when Skalka and Craig communicated confidential information regarding STLA's cash flow and escrow accounts to Creekmore. Doc. 17 ¶ 32. Creekmore then used the information when he wrote to a potential client, discouraging him from doing business with STLA and alleging that STLA's escrow promotions were "irresponsible in the face of their challenges and cash flow." In another example, in August 2012, Creekmore sent a message to Andy Kieffer, a potential client hoping

to obtain a $400,000 policy, stating that STLA could not write contracts in Guadalajara, Mexico any longer. Doc. 17 ¶ 37. Counter-Plaintiffs argue that these statements and actions were made with malice, as the speakers knew the statements were false and intended them to interfere with STLA's economic interest. Doc. 17 ¶ 67. Counter-Plaintiffs further assert that these statements damaged STLA's business reputation and goodwill in Mexico and other territories, and caused them to lose business. Doc. 17 ¶ 66-68.

Counter-Plaintiffs alleged in their First Amended Counterclaim and Third Party Complaint that after the parties to the Joint Venture Agreement agreed to the First Addendum of the Joint Venture Agreement, STGC and STC executives represented that STLA would be the sole sales outlet for STGC/STC's real estate services in Mexico, and STGC/STC affiliate Stewart Title Guaranty de Mexico, S.A. de C.V. would cancel any existing agent contracts or transfer those responsibilities to STLA. Doc. 17 ¶ 61.[4] According to Counter-Plaintiffs, STLA relied on these promises when it invested more than $10,000,000 developing its business, including its entry into the Mexican market. Doc. 17 ¶ 62-63. Counter-Plaintiffs assert that STGC and STC foresaw that STLA would invest money to develop its brand in reliance on their promises, and injustice can only be avoided by enforcing these alleged promises. Doc. 17 ¶ 63-64.

## II.   Legal Standards

### A.   Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and *Ashcroft v. Iqbal*, 556

---

[4] In their original Answer, Counterclaim, and Third Party Complaint (Doc. 3¶ 115) the Counter-Plaintiffs had alleged "STG[C]/STC promised STLA that STLA and its subsidiaries would have an unrestricted and perpetual right to use the Stewart trademark and trade name across the covered territories and that STLA would be the vehicle for STG/STC's expansion in Mexico, Central America, and the non-U.S. territories of the Caribbean." Counter-Plaintiffs further alleged that "STG[C]/STC forsaw that STLA would invest money to develop its business and the Stewart Title brand in reliance on STG/STC's promise." (*Id.* ¶ 117). The language was obviously amended in an effort to take these promises outside the confines of the provisions of the Addendum to the Joint Venture Agreement.

U.S. 662 (2009), the Supreme Court confirmed that Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Federal Rule of Civil Procedure. 8(a)(2). "To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). In determining plausibility, courts should first disregard "formulaic recitation[s] of the elements" of the legal claim as conclusory. *Id.* at 662. Second, the court must assume the truth of all factual allegations and determine whether those factual allegations allege a plausible claim. *See id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (internal citation omitted) (quoting FED. R. CIV. P. 8(a)(2)). If the facts fail to "nudge [the] claims across the line from conceivable to plausible, [then the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

      **B.**    **Rule 12(e) Motion for a More Definite Statement**

According to Rule 12(e), the court determines whether a complaint is such that "a party cannot reasonably be required to frame a responsive pleading." Fed. R. Civ. P. 12(e); see *Mitchell v. E-Z Way Towers, Inc.*, 269 F.2d 126, 130 (5th Cir. 1959). A party may seek a more definite statement under Rule 12(e) if a complaint is "so vague or ambiguous that the party cannot reasonably prepare a response." FED. R. CIV. P. 12(e). A 12(e) motion "must point out the defects complained of and the details desired." FED. R. CIV. P. 12(e). An improper use of Rule 12(e) is to "requir[e] a plaintiff to amend his complaint which under Rule 8 is sufficient to

withstand a motion to dismiss." *Id.* at 132.  A court granting a 12(e) motion may not dismiss the complaint for failure to state a claim. *Mitchell*, 269 F.2d at 130 (citing *Glus v. Brooklyn E. Dist. Terminal*, 359 U.S. 231, 235 (1959)).

### III.   Discussion

#### A.   Breach of the Alleged Perpetual License in the Joint Venture Agreement

In ¶ 52 of the Amended Counterclaim and Third Party Complaint (Doc. 17) Counter Plaintiffs allege "Through the Joint Venture Agreement, STGSTC granted STLA and its subsidiaries the unrestricted and perpetual right to use the Stewart trademark and trade name in all of the covered territories.  STG/STC has breached the Joint Venture Agreement by purporting to terminate and revoke the unrestricted and perpetual grant."

In Counter-Defendants' motions to dismiss, they argue that for multiple reasons, Counter-Plaintiffs cannot maintain a claim for breach of the provision in the Joint Venture Agreement which purportedly granted a perpetual license to use the Stewart name and trademark.  First, they argue that STGC is not a party to the Joint Venture Agreement, and SII (now STC) was not acting as STGC's agent when it entered the agreement.  Doc. 13 ¶ 15.  Second, Counter-Defendants maintain that the parties' licensing arrangement is governed by the license agreement itself, and not by the Joint Venture Agreement, referring to Section IX of the Joint Venture Agreement, which expressly provides *inter alia* that "use of the name, trademark, and service mark . . . is only a non-exclusive license granted to [STLA] by [STGC] by virtue of a separate exclusive Underwriting Agreement to be entered into by and between [STLA] and [STGC] concurrently herewith."  The Underwriting Agreement to which the Joint Venture Agreement refers was executed by STGC and STLA on December 6, 2001, the day after the

Joint Venture Agreement was executed. Doc. 30-2. This license agreement covered the original territory STLA was formed to service, which excluded the United Mexican States. With the Addendum to the Joint Venture Agreement, STLA's territory was expanded into Mexico, and a second, but similar, licensing arrangement was born. This is the Exclusive License Agreement (Doc 30-1) between STGC and STLA, executed February 2, 2005, after the Addendum to the Joint Venture Agreement. Despite the fact that the Addendum uses the language in ¶ 3) III A., "due to the fact that (i) STG has granted Stewart Title Latin America and its subsidiaries the unrestricted and perpetual right to use the Stewart trademark and trade name, in all of the countries of the TERRITORY, and only in the TERRITORY and (ii) that the parties have agreed that Stewart Title Latin America will be the vehicle that the partners will use to expand the TERRITORY, the shareholders agree. . . ." STG granted STLA the right to use the Stewart trademark and trade name in the Underwriting Agreement, which was referred to in ¶ 9 B of the Joint Venture Agreement. A month after the execution of the Addendum, STG granted STLA in the Non-Exclusive License Agreement (Doc. 30-1) the right to use the Stewart trademark and trade name in the United Mexican States.

  Finally, Counter-Defendants argue that even if the Joint Venture Agreement did grant a perpetual license, STLA would be unable to maintain a claim for breach of contract because Texas law governs the use of the license pursuant to the License Agreement, and under Texas law, a perpetual contract is terminable at the will of either party. *Trient Partners I Ltd. v. Blockbuster Entm't Corp.*, 83 F.3d 704, 708 (5th Cir. 1996).

  In Counter-Plaintiffs' response, they argue that the breach of contract claim should not be dismissed because although STGC was not a party to the Joint Venture Agreement, factual questions exist as to whether STC was acting as STGC's agent when it entered the contract.

Doc. 28 at 3, n.2.  Counter-Plaintiffs also point out that the Joint Venture Agreement is expressly governed by British Virgin Islands' law, under which "a contract lasts forever and the burden is on the party seeking to prove otherwise to overcome the presumption of perpetuity."  Doc. 28 at 9, n.10.  Finally, Counter-Plaintiffs argue that even if Texas law did govern the grant of the license in the Joint Venture Agreement, the grant is not terminable at will because the Joint Venture Agreement is not indefinite in duration; it terminates upon determinable events, including (1) written agreement of the parties; (2) bankruptcy, receivership, dissolution or insolvency of STLA, or cessation of its business; or (3) registration of a statement filed with the Securities and Exchange Commission.  Doc. 28 at 4-7.  Counter-Plaintiffs argue that under Texas law, cessation of operations presents a terminable event such that a contract is not of indefinite duration.  *Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 842 (Tex. 2010) (citing *City of Big Spring v. Board of Control*, 404 S.W.2d 810, 815 (Tex. 1966)).

In Counter-Defendants' reply, they add an additional argument that STLA does not have standing to assert a valid claim for breach of the Joint Venture Agreement since STLA was not a party to the Agreement.  Doc. 30 at 2-3.  STLA filed a sur-reply to point out that STGC may not raise new arguments in their reply, and added that as third party beneficiaries of the Joint Venture Agreement, they do have standing to bring a breach of contract claim.  Doc. 33 at 1-3.

If STGC and STLA can be considered parties to or third party beneficiaries of the Joint Venture Agreement and the Addendum to the Joint Venture Agreement, Counter-Plaintiffs have not asserted a valid cause of action for breach of the alleged perpetual license under the Joint Venture Agreement because the Court finds that the Non-Exclusive License Agreement, executed *after* the Joint Venture Agreement and the Addendum, controls the issue.  Paragraph 19 of the Non-Exclusive License Agreement contains a merger clause that states "this Agreement

constitutes the entire agreement of the Parties and supersedes all prior contract or agreements whether oral or written." This paragraph disclaims all reliance on any alleged grant of a perpetual license in the Joint Venture Agreement. "Texas courts and the Fifth Circuit have enforced merger clauses where the contract and the circumstances of its formation evince a clear and specific intent to disclaim reliance on prior representations." *LeTournea Tech. Drilling Sys., Inc. v. Nomac Drilling, LLC*, 676 F.Supp.2d 534, 544 (S.D. Tex. 2009) The Court finds that the Non-Exclusive License Agreement supersedes the Joint Venture Agreement's purported grant of a perpetual license, and will grant Counter-Defendants' motion to dismiss that claim.

### B. Business Disparagement

Under Texas law, a business disparagement claim requires proof of (1) publication by the defendant of disparaging words; (2) falsity; (3) malice; (4) lack of privilege; and (5) special damages. *J. Hurlbut v. Gulf Atl. Life. Ins. Co.*, 749 S.W.2d 762, 766 (Tex. 1987). Unlike a claim for defamation, a claim for business disparagement always requires a plaintiff to prove actual malice. *Rimkus Consulting Grp. Inc. v. Cammarata*, 688 F.Supp. 598, 671 (S.D. Tex. 2010). In order to show malice, the statements must have been made with knowledge that they were false, with reckless disregard for whether they were true or false or "with ill will or an intent to interfere with the plaintiff's economic interest." *Id.* Reckless disregard is shown by evidence that the defendant had serious doubts as to the statements' truth. *Id.* In order to show special damages, the plaintiff must demonstrate that the disparaging statement was a substantial factor in causing third parties not to conduct business with the plaintiff that resulted in a direct financial loss to the plaintiff, "such as specific lost sales, loss of trade, or loss of other dealings." *Id.* at 767.

In a business disparagement claim, the plaintiff must plead and prove the falsity of the

statement as a part of his cause of action. *Hulbut*, 749 S.W.2d at 766. "A statement that is true or substantially true cannot support a claim for…business disparagement." *Basic Capital Mgmt., Inc. v. Dow Jones & Co., Inc.*, 96 S.W.3d 475, 480-81 (Tex.App.-Austin 2002, no pet.). Counter-Plaintiffs have failed to plead and prove sufficient facts regarding the allegedly disparaging statements. The Court will order Counter-Plaintiffs to make a more definite statement of this claim to make clear how the statements alleged satisfy the elements of the claim of business disparagement, including when and by whom the statements were made.

### Promissory Estoppel

Promissory estoppel is an equitable doctrine that is sometimes used as a defense to "prevent[] a party from insisting upon [its] strict legal rights when it would be unjust to allow [it] to enforce them." *Wheeler v. White*, 398 S.W.2d 93, 96 (Tex. 1965). Under Texas law, the requisite elements of promissory estoppel are: "(1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the promisee to his detriment." *Addicks Servs., Inc. v. GGP-Bridgeland, LP*, 596 F.3d 286, 300 (5th Cir. 2010) (citing *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983)). The alleged promise must not be "too vague and indefinite." *Id.* The reliance by the promisee "must be both reasonable and justified." *Id.* (citing *Vlasek v. Wal-Mart Stores, Inc.*, No. H-07-0386, 2007 WL 2402183, at *6 (S.D. Tex. Aug. 20, 2007).

Counter-Plaintiffs amended their original claim to allege promissory estoppel based on the following promises made *after* the execution of the First Addendum to the Joint Venture Agreement: (1) that STLA would be the sole sales outlet for STG/STC's real estate services in Mexico and STGC/STC would not use third parties or other agents; (2) STG/STC affiliate Stewart Title Guaranty de Mexico would cancel existing agent contracts or transfer those responsibilities to STLA; and (3) Stewart Title Guaranty de Mexico would focus on being an

insurance company, and STLA would provide the commercial structure in Mexico. Doc. 17 ¶ 60-61. Counter-Defendants argue that Counter-Plaintiffs' original counterclaim for promissory estoppel alleged reliance only on the express promises contained in the Joint Venture Agreement, and that it is disingenuous for Counter-Plaintiffs to modify the claim to allege reliance on promises not contained in the Joint Venture Agreement in order to avoid dismissal. Doc. 30 at 11-12. Counter-Plaintiffs' tactics in this regard may well be disingenuous, but the Court does not believe that at this stage it is proper to consider such allegations. Rather, the Court will consider the sufficiency of the amended counterclaim for promissory estoppel.

The Counter-Plaintiffs maintain that the Joint Venture Agreement is to be construed in the light of the law of the British Virgin Islands. Paragraph XXVI of the Agreement provides, *inter alia,* "This AGREEMENT shall be governed by and construed in accordance with the laws of the British Virgin Islands, without reference to any conflicts of law rules." Counter-Plaintiffs attach as Exhibit D to Doc. 33, their Sur-Reply to Counter-Defendants' Reply in Support of Motion to Dismiss the Amended Counterclaim and Motion for More Definite Statement, an excerpt from the "Laws of Antigua and Barbuda," which is titled "The Common Law (Declaration of Application) Act" enacted 20th June 1705, which states, inter alia, "The Common Law of England, . . . . is in force in each of these your Majesty's Leeward Charibbee Islands. . . ." Based upon this law Counter-Plaintiffs argue that the Common Law of England governs the British Virgin Islands, and that that law should govern the Joint Venture Agreement and the Addendum. The Court has been presented with no evidence to the contrary.

Both the underwriting agreement and the license agreement between STLA and STGC provide that Texas law governs those agreements.

What law governs the alleged agreement created by promissory estoppel in the instant

case has not been established. English Common Law does not recognize promissory estoppel as providing a cause of action for damages. The theory of promissory estoppel may be used as a defense to a claim; a shield, not a sword. *cf. Central London Property Trust Ltd. V. High Trees House Ltd.* [1947] KB 130; *Combe v. Combe* [1941] 2 KB 215. In Texas the theory may be used as a sword as well as a shield. In the instant case there are a number of factual and legal questions that are unanswered in the briefing on the motion to dismiss. Given that state of affairs, and viewing Counter-Plaintiffs' factual allegations of promissory estoppel in a light most favorable to them, they have pled a plausible claim for promissory estoppel, and the motion to dismiss will be denied.

### IV. Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that the Motion to Dismiss (Doc. 23) filed by Counter-Defendant Stewart Title Guaranty Company and Third Party Defendants Stewart Title Company, Michael B. Skalka, and Charles M. Craig is **GRANTED** as to the claims for breach of contract based on the alleged perpetual license and **DENIED** as to the claim for promissory estoppel. It is further

**ORDERED** that the motion to dismiss the Counter Plaintiffs' claim for business disparagement is **DENIED**, but the Rule 12(e) claim for more definite statement of that claim is **GRANTED.**

SIGNED at Houston, Texas, this 30th day of September, 2013.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE