United States District Court
Southern District of Texas

**ENTERED**

March 22, 2017

David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| STEWART TITLE GUARANTY COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:12-CV-03269 |
| | § | |
| STEWART TITLE LATIN AMERICA, INC., | § | |
| *et al*, | § | |
| | § | |
| Defendants. | § | |
| | § | |

## OPINION AND ORDER

Pending before the Court in the above-referenced matter are Third-Party Defendants Michael B. Skalka ("Skalka") and Charles M. Craig's ("Craig") Motion for Summary Judgment Doc. 70; Plaintiff Stewart Title Guaranty Company's ("STGC") Motion for Partial Summary Judgment on its Affirmative Claims, Doc. 71; and STGC and Third-Party Defendant Stewart Title Company's ("STC") Motion for Summary Judgment on Stewart Title Latin America's ("STLA")[1] Counterclaims, Doc. 74. The Court has considered the parties' filings, the record, and the law. For the reasons that follow, the Court grants all of the pending motions.

### I. Background

Because the facts of this case are recited extensively in this Court's prior orders, Docs.

---

[1] In the context of STGC's Motion, "Defendants" refers to all STLA entities: Stewart Title Latin America, Inc. ("STLA"), Stewart Latin America, S.A. de C. V. ("STLA-Mexico"), Stewart Title Baja, S.A. de C. V. ("STB-Mexico"), Stewart Title Dominicana, S.A. ("STDR"), Stewart Title Eastern Caribbean, Ltd. d/b/a Stewart Title Eastern Caribbean, Inc. ("STEC"), Stewart Title Guadalajara, S.A. de C.V. ("STG-Mexico"), Stewart Title Los Cabos, S.A. de C.V. ("STLC-Mexico"), Stewart Title Puerto Peñasco, S.A. de C.V. ("STPP-Mexico"), Stewart Title Riviera Maya, S.A. de C.V. ("STRM-Mexico"), and Stewart Title Costa Rica ABC, S.A. ("STCR"). Of these entities, only STLA, STDR, STEC, and STCR participate in STLA's Answer and Counterclaim. Because STLA owns and controls the remaining Defendants, both sides use "STLA" to refer to all participating entities except when precision is necessary. The Court does the same.

34, 56, the Court need not repeat them here. For the purposes of the motions now before this Court, however, it is worth restating that the crux of the parties' dispute is the proper scope of STLA's use of STGC's "Stewart Title" trademarks. STLA argues that it was granted an unrestricted, perpetual right to use the trademarks and STC and STGC have wrongfully tried to revoke that right. STC and STGC respond that the express terms of a series of contracts between the parties make it clear that STLA's use of the trademarks was restricted and STGC was free to revoke STLA's license to the trademarks when STLA violated a number of contractual terms.

Invoking these terms, in September 2012 STGC sent termination notices to STLA. Docs. 74-29, 74-30, 74-31, 74-32. These notices ordered STLA to cease issuing title policies and discontinue use of the STGC trademarks. Docs. 74-29, 74-30, 74-31, 74-32. The notices also cited each provision of the agreements that STGC alleged STLA had violated. Doc. 74-29. Nevertheless, STLA continued to use the trademarks. Doc. 74 at 15.

In an effort to regain control of its trademarks, STGC filed its Original Petition in the 215th Judicial District Court of Harris County on October 10, 2012, asserting four causes of action: (1) Declaratory Judgment: License Agreement;[2] (2) Declaratory Judgment: Underwriting Agreements; (3) Breach of Contract: Underwriting Agreements; and (4) Application for Injunctive Relief. Doc. 1-2 at 1, 18–22. STLA removed the action to this Court on November 5, 2012. Doc. 1. On November 13, 2012, STLA filed its Answer, Counterclaim, and Third-Party Complaint. Doc. 3. STLA asserted six counterclaims against STGC and STC: (1) Breach of Contract: Joint Venture Agreement; (2) Breach of Contract: Underwriting Agreements; (3) Promissory Estoppel; (4) Business Disparagement; (5) Breach of Fiduciary Duty as to Skalka and Craig; and (6) Conspiracy to Breach Fiduciary Duty. Doc. 3 at 18–21.

---

[2] The License Agreement is also known as the Joint Venture Agreement.

On September 30, 2013, this Court granted STGC's Motion to Dismiss STLA's breach-of-contract claim with regard to the perpetual license of the Joint Venture Agreement.[3] Doc. 34 at 15. The Court also ordered STLA to more definitively state a counterclaim for business disparagement. *Id.* When it failed to do so, STGC and STC moved the Court to strike or dismiss the claim. Doc. 59. On July 31, 2015, STLA filed its Second Amended Counterclaim and Third Party Complaint in which it dropped its business-disparagement claim. Doc. 61.

On April 29, 2016, Skalka, Craig, STGC, and STC filed their pending motions for summary judgment. Docs. 70, 71, 74. Although the motions reference and incorporate one another, each takes aim at different claims. Skalka and Craig's motion only attacks STLA's breach-of-fiduciary-duty counterclaim against them, STGC's motion targets most of its affirmative claims, and STGC and STC's joint motion assails all of STLA's counterclaims. STLA filed its Omnibus Response to Plaintiff's and Third-Party Defendants' Collective Motions for Summary Judgment ("Omnibus Response") on May 20, 2016. Doc. 76. Skalka, Craig, STGC, and STC filed replies on June 13, 2016. Docs. 82–85. The pending motions are now ripe for consideration.

## II. Legal Standard

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment under Federal Rule of Civil Procedure 56(c) is appropriate when, viewed in the light most favorable to the nonmovant, the court determines that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no

---

[3] The Court reaffirmed this dismissal (albeit on different grounds) in its March 28, 2015 Order granting STLA's Motion for Reconsideration. Doc. 56.

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1996). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The movant initially bears the burden of identifying those portions of the pleadings and discovery in the record that it finds demonstrate the absence of a genuine issue of material fact on which the nonmovant bears the burden of proof at trial. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 885 (1990) (citations omitted). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. When the moving party makes an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact concerning every element of its cause of action in order to defeat the motion for summary judgment. *Edwards v. Your Credit, Inc.*, 148 F.3d 427, 431 (5th Cir. 1998); *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd.*, 40 F.3d 698, 712 (5th Cir. 1994); *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). There is no genuine issue for trial if a rational trier could not find for the nonmoving party based on the evidence presented. *City Pub. Serv. Bd.*, 40 F.3d at 712–13 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 584–88 (1986)).

Allegations in a plaintiff's complaint are not evidence. *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (citation and internal quotation marks omitted) ("[P]leadings are not summary judgment evidence."); *Johnston v. City of Houston*, 14 F.3d 1056, 1060 (5th Cir. 1995) (quoting *Solo Serve Corp. v. Westtown Assoc.*, 929 F.2d 160, 164 (5th Cir. 1991) (for the

party opposing the motion for summary judgment, "'only evidence—not argument, not facts in the complaint—will satisfy' the burden."). Likewise, unsubstantiated assertions, conclusory allegations, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994). Instead, the nonmovant must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue of material fact for trial." *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 493 (5th Cir. 2001) (quoting *Celotex*, 477 U.S. at 324) (internal quotation marks omitted).

In ruling on a summary judgment motion, the court must consider all evidence and draw all inferences from the factual record in the light most favorable to the nonmovant, but the court may not make credibility determinations or weigh the evidence. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

### III. Analysis

The Court begins by noting that STLA conflates STGC and STC throughout its filings. *See* Docs. 61, 76. Nowhere, however, does STLA provide legal authority for doing so. *See id.* STGC and STC are separate, independent corporate entities—related only as parent and subsidiary. Doc. 74-44 at 3. Consequently, unless one of the equitable doctrines for disregarding the separate existence of parent and subsidiary corporations is applicable (i.e., "single business enterprise" or "alter ego"[4]), STGC and STC must be treated as distinct and separate "persons" as

---

[4] The "single business enterprise" theory is an equitable doctrine applied to reflect partnership-type liability principles when corporations integrate their resources and operations to achieve a common business purpose. *El Puerto De Liverpool, S.A. De C.V. v. Servi Mundo Llantero S.A. De C.V.*, 82 S.W.3d 622, 637 (Tex. App.—Corpus Christi 2002), *as supplemented on denial of*

a matter of law. *See N. Cypress Med. Ctr. Operating Co. v. Fedex Corp.*, 892 F. Supp. 2d 861, 865 (S.D. Tex. 2012) (citation omitted); *Airflow Hous., Inc. v. Theriot*, 849 S.W.2d 928, 931 (Tex. App.—Houston [1st Dist.] 1993, no writ) (citation omitted).

STLA's stated reason for treating the entities as one is that "knowledge cannot be segregated between STG and STC." Doc. 76 at 9. This is an insufficient rationale; it addresses none of the factors required for application of the single business enterprise or alter ego doctrines. *See supra* note 4. Accordingly, the Court will analyze each of STLA's claims against STGC and STC separately.

### A.    Breach of Contract

#### 1. Formation Agreement

In its Third-Party Complaint, STLA alleges that STGC/STC breached the Formation Agreement by wrongfully terminating the Underwriting and License Agreements; wrongfully competing with STLA in the covered territories; terminating and revoking the unrestricted and perpetual grant; and otherwise failing to carry out the terms of the agreements. Doc. 61 at ¶¶ 48–53. STLA alleges reliance damages of "millions of dollars in building the Stewart Title brand

---

*reh'g en banc*, (Aug. 1, 2002) (citing *N. Am. Van Lines, Inc. v. Emmons,* 50 S.W.3d 103, 119 (Tex. App.—Beaumont 2001, pet. denied)); *Aluminum Chems. (Bolivia), Inc. v. Bechtel Corp.*, 28 S.W.3d 64, 68 (Tex. App.—Texarkana 2000, no pet.). Several non-exhaustive factors can be considered to determine whether corporations have been maintained as separate entities, including whether the corporations have "common employees; common offices; centralized accounting; payment of wages by one corporation to another corporation's employees; common business name; services rendered by the employees of one corporation on behalf of another corporation; undocumented transfers of funds between corporations; and unclear allocation of profits and losses between corporations." *El Puerto*, 82 S.W.3d at 637. In contrast, the "alter ego" theory generally involves proof of fraud, i.e., proof that the corporation is organized and operated as merely a tool or business conduit of another corporation. *In re Carmelita, Inc.*, 1:08-CV-00410, 2009 WL 2356488, at *5 (S.D. Tex. July 29, 2009). "To recover under a finding of a single business enterprise, no proof of fraud is required; instead, the single business enterprise theory relies on equity analogies to partnership principles of liability." *Emmons*, 50 S.W.3d at 119 (citation omitted).

across Latin America." *Id.* ¶ 53.

In response, STGC and STC note that STGC cannot be liable for breach of the Formation Agreement because it was not a party to it. Doc. 74 at 16–17. Similarly, STGC and STC argue that STC cannot be liable for breach of the Formation Agreement on the basis of breach of the Underwriting or Licensing Agreements because STC was not a party to those underlying agreements and, therefore, could not have breached them. *Id.* at 18. STGC and STC also point out STLA's lack of evidence to support its arguments that STGC and STC breached the Formation Agreement by wrongfully competing against STLA in the covered territories and failing to make premium payments. *Id.* at 18–19.

With regard to the wrongful-competition accusations, STGC and STC urge, "all of Counterclaimants' complaints about competition relate to activities carried out by employees, representatives, or agents of STGM,[5] not STC." *Id.* at 18. Next, STGC and STC draw the Court's attention to STLA shareholder and general manager Christopher Hill's testimony in which he admits that he has no knowledge of STC ever competing directly with STLA. *Id.* at 19 (citing Doc. 74-42 at 13–14).

STGC and STC respond to STLA's claim that STC failed to make premium payments due under the Formation Agreement by pointing out that the Underwriting and Service Provider Agreements make it clear that STC never had an agreement to pay anything to STLA. *Id.* Rather, STLA agreed in these agreements to share premiums with STGM. *Id.* STGC and STC contend that STLA has no evidence otherwise. *Id.*

Finally, STGC and STC respond to STLA's argument that revocation of the alleged perpetual right to a license breached the Formation Agreement by pointing out that because STC

---

[5] STGM refers to Stewart Title Guaranty Mexico, a separate and distinct subsidiary of STGC that is not a party to this lawsuit. Doc. 70 at 5.

does not own the trademarks—a fact this Court has already established[6]—it cannot have either granted or revoked a perpetual license of said trademarks. *Id.* at 19–20. STGC and STC point out that this Court has already found that the Formation Agreement granted no such "perpetual license" to STLA and instead stated that "licensing will be governed by agreements between [STGC] and [STLA]." *Id.* at 20 (citing Doc. 56 at 4, 9).

As STGC and STC point out, Texas law does not provide a cause of action for breach of contract against a defendant who is not a party to the underlying contract. *Silvas v. Ohio Cas. Ins. Co.*, SA-05-CA-0627 XR, 2005 WL 2645015, at *2 (W.D. Tex. Aug. 24, 2005) (citing *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 698 (Tex. 1994); *C & C Partners v. Sun Exploration & Prod.*, 783 S.W.2d 707, 721 (Tex. App.—Dallas 1989, writ denied)). Accordingly, as a non-party, STGC could not have, as a matter of law, breached the Formation Agreement. Likewise, STC cannot be liable for breach of the Formation Agreement as a result of alleged breaches of underlying agreements to which it was not a party.

Nor is there evidence in the record to support STLA's claims that STC wrongfully competed in the covered territories or that STC wrongfully withheld premiums. Indeed, STGC, not STC, was the party that contracted with STLA in the Underwriting and Service Provider Agreements that outlined territorial boundaries and premium-payment terms. *See* Docs. 74-5 at 1–74-18 at 1. Finally, to the extent that STLA relies on STC's alleged breach of the perpetual license as the basis of its breach-of-contract claim in the Formation Agreement (a.k.a. Joint Venture Agreement), the Court agrees with STGC and STC that such a claim has been foreclosed by the Court's prior opinion:

> Counter-Defendants' motion to dismiss the counter claim and third party claims
> for breach of contract under the perpetual right clause of the First Addendum

---

[6] Doc. 56 at 4 n.3.

> (Joint Venture Agreement) is GRANTED. The Counterclaim and Third Party
> Claims for breach of contract under the alleged perpetual right to use of the
> Stewart name are DISMISSED.

Doc. 56 at 9. As a result, summary judgment is warranted on STLA's breach-of-contract claims

against both STGC and STC regarding the Formation Agreement.

### 2.   Underwriting Agreements

STLA directs its claim for breach of the Underwriting Agreements at STGC only. *See*

Doc. 61 at ¶¶ 54–58. STLA alleges that STGC breached its obligations under the Underwriting

Agreements by "wrongfully terminating the separate agreements prior to the full 20-year term

without the written agreement of the parties" and "providing title guaranty services without using

Counter-plaintiffs as its exclusive representative." *Id.* ¶¶ 56, 58.

In their Motion for Summary Judgment on STLA's Counterclaims, STGC and STC point

out that each of the Underwriting Agreements gave STGC a right to terminate by written notice

if any one of a number of triggering "occurrences" took place. Doc. 74 at 23. STGC and STC

argue that three of these occurrences justified STGC's termination: (1) fraud or dishonesty by

STLA or an escrow account shortage; (2) failure to pay remittances to STGC; and (3) pursuit of

"a course of conduct not in keeping with sound title guaranty business practices."[7] *Id.*

---

[7] With slight variations, section 9 of each of the Underwriting Agreements reads in relevant part:

> In addition to other termination provisions contained in this AGREEMENT,
> [STGC] may immediately terminate this AGREEMENT at any time by written
> notice to [STLA entity] upon the happening of any of the following: . . .
>
> (d) Any notice or intonation of any act by [the STLA entity] of apparent fraud or
> dishonesty, or shortage in [the STLA entity's] escrow account, . . .
>
> (g) Any failure, refusal, or neglect by [the STLA entity] to pay any remittances
> due to [STGC] within twenty (20) days after written notice from [STGC] to [the
> STLA entity] of a deficiency; . . .

STLA responds that summary judgment is inappropriate because "the record includes ample evidence that STG/STC terminated these contracts under false pretenses to achieve the new management's strategic shift to cut ties with STLA and take the Latin American market for itself." Doc. 76 at 21. In support, it points to a Stewart Board Strategic Retreat PowerPoint presentation that states: "Relationships [with STLA] must be severed form [sic] all standpoints, ownership and underwriting; Need to get our name back . . . ; Unfortunately we were just presented a document signed in 2005 which gave STLA the 'perpetual use of our trademark and name.'" *Id.* (quoting Doc. 76-67 at 11.)

With regard to the alleged escrow shortage, STLA argues that "[t]he truth of the matter is that the alleged 'deficit' was nothing more than a change in liquidity" because "STLA obtained a tract of land worth more than the amount it paid out" of the escrow fund in settling a legal dispute. *Id.* at 21–22. As such, "the net value of the escrow account actually increased and only the liquidity of the account changed." *Id.* at 22. STLA also contends that STGC/STC's reliance on an escrow-account shortage as grounds to terminate the relationship are suspect because Craig and Skalka both approved of the swap of escrow funds for land. *Id.*

In an effort to fend off STGC's claim that STLA refused to pay premiums, STLA argues that it has tried to settle the accounts on numerous occasions and "has been willing to pay what it owes after the accounts have been reconciled," but STGC "has never specified the exact amount it claims STLA owes." *Id.* at 23. Finally, in response to STGC and STC's argument that STLA engaged in "unsound business practices," STLA claims that because the agreements do not

---

(i) Any determination by [STGC], in its sole discretion, that [the STLA entity] and/or its principals are pursuing a course of conduct not in keeping with sound title guaranty business practices . . . or upon discovery that [the STLA entity] or its principals have furnished any misleading or false information to [STGC] . . . .

define what constitutes an "unsound business practice," "the arbitrariness of STG/STC's argument presents a fact question for the jury." *Id.* at 23–24.

"[A] title company that accepts funds for disbursement in a closing transaction for a fee owes the party remitting those funds a duty of loyalty, a duty to make full disclosure, and a duty to exercise a high degree of care to conserve the money and pay it only to those persons who are entitled to receive it." *Home Loan Corp. v. Tex. Am. Title Co.*, 191 S.W.3d 728, 731 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (citing *City of Forth Worth v. Pippen*, 439 S.W.2d 660, 664–65 (Tex. 1969)). In this case, there is no dispute that escrow funds were dispersed to cover a settlement. Whether STGC and STC representatives on the STLA board approved this course of action is irrelevant. The fact of the matter is that escrow funds were dispersed to someone other than those persons who were entitled to receive them. Accordingly, the express terms of the agreement allowed STGC to terminate the Underwriting Agreements.

Whether STLA wanted to reconcile its accounts and remit premiums to STGC is similarly inapposite. The contract terms are explicit: STLA had a duty to remit premium payments to STGC within 20 days and failure to do so was grounds for termination. Finally, STLA's argument that STGC's termination was arbitrary because the contracts lacked a definition of "unsound business practices" is unpersuasive. When, as here, the parties have contracted to give one party the "sole discretion" to terminate the agreement, courts will uphold the termination as long as there was a reasonable basis for it. *See, e.g.*, *Furniture & Accessory Retail Grp., Inc. v. Lane Furniture Indus., Inc.*, 477 Fed. App'x 172, 174–75 (5th Cir. 2012); *Mansfield SEQ. 287 & Debbie Ltd. v. Citibank, N.A.*, 3:10-CV-2204-L, 2011 WL 3471315, at *4, 6–7 (N.D. Tex. Aug. 5, 2011); *Bass v. Bass*, 790 S.W.2d 113, 118–119 (Tex. App.—Fort Worth 1990, writ dism'd). In this case, the record provides ample evidence to support STGC's

decision to terminate the agreement and demonstrates that STGC did so in accordance with the contractual terms. That STLA disagrees with STGC's decision is of no import. "If the parties intended to divest Defendant of discretion, the parties should have contracted for such a right." *Mansfield*, 2011 WL 3471315, at *6. Accordingly, STGC and STC's Motion for Summary Judgment on STLA's claim for breach of the Underwriting Agreements is granted and this claim is dismissed with prejudice.

## B.    Promissory Estoppel

In support of their claim of promissory estoppel, STLA alleges that, outside of the written contracts, STLA was granted a perpetual right to the Stewart trademarks and was assured "that STLA would be the sole sales outlet for STGC/STC's real estate services in Mexico." Doc. 61 at ¶¶ 60–61. According to STLA, "[r]elying on these promises, STLA spent more than $10,000,000 developing its business." *Id.* ¶ 62.

STGC and STC attack STLA's promissory-estoppel claim in three parts.

### 1.   Statute of Limitations

First, STGC and STC argue that enforcing the alleged promise would violate the statute of limitations because STLA did not assert its claim until 2013 but was aware of the alleged improper competition by 2005 or 2006. Doc. 74 at 27–28. STLA responds that STGC and STC's statute-of-limitations argument is "incomplete and incorrect," because "they offer no evidence that they breached the promise for the perpetual license before STG sent the termination letters in September 2012." Doc. 76 at 32.

"[T]he statute of limitations for a promissory-estoppel claim is four years, and such a claim accrues 'when the promisor breaches its promise to the promisee.'" *Rosenberg v. Citibank Tex., N.A.*, 2:13-CV-00213-J, 2013 WL 12123244, at *2 (N.D. Tex. Dec. 27, 2013 (citing

*Prestige Ford Garland Ltd. P'ship v. Morales*, 336 S.W.3d 833, 836-37 (Tex. App.—Dallas 2011, no pet.); Tex. Civ. Prac. & Rem. Code § 16.051). In this case, STLA correctly points out that breach of STC and STGC's alleged promise to the perpetual right to use the Stewart trademark did not occur until September 2012, when STLA received the notices of termination. Accordingly, STLA's claims for promissory estoppel on the basis of a promised perpetual license fall well within the statute of limitations. In contrast, the record demonstrates that STLA was aware that it was not the sole sales outlet in Mexico long before it asserted its claim for promissory estoppel—as early as 2005 and by 2008 at the latest. *See* Docs. 74-42 at 12, 74-34. Because STLA did not assert its claim until 2013, its promissory estoppel claim based on the alleged promise to be the sole sales outlet in Mexico is barred.

### 2. Statute of Frauds

Second, STGC and STC argue that STLA's promissory-estoppel claim is barred by the statute of frauds because an alleged oral promise for a perpetual license is an agreement that cannot be performed within one year. Doc. 74 at 31. STLA responds that STGC and STC waived this defense by not asserting it in their answer or giving any other notice of their intent to raise it. Doc. 76 at 33. Alternatively, it contends that the statute of frauds is not applicable because the alleged promises were reduced to writing on a number of occasions. *Id.* In their Reply, STGC and STC cite a number of cases to support the proposition that the waiver rule of Federal Rule of Civil Procedure 8(c) does not apply if the affirmative defense is raised in a manner that does not result in unfair surprise and the plaintiff was not prejudiced in its ability to respond. Doc. 84 at 17. Under this logic, despite STGC and STC's failure to raise the statute-of-frauds defense before their Motion for Summary Judgment on STLA's Counterclaims, STGC and STC reason that STLA Counter-Plaintiffs' waiver argument must fail because they were afforded a full

opportunity to respond in their Omnibus Response. *Id.*

"Invoking the statute of frauds is an affirmative defense, which must be specially pled." *Automated Med. Labs., Inc. v. Armour Pharm. Co.*, 629 F.2d 1118, 1122 (5th Cir. 1980) (citing Fed. R. Civ. P. 8(c)). Under Rule 8(c), failure to set forth any matter constituting an affirmative defense in a defendant's responsive pleading generally results in waiver of the defense. *Allied Chem. Corp. v. Mackay*, 695 F.2d 854, 855 (5th Cir. 1983) (per curiam) (citing Fed. R. Civ. P. 8(c); Wright and Miller, Federal Practice and Procedure: Civil § 1278). Nevertheless, as long as the plaintiff has fair notice of the affirmative defense, absolute specificity in pleading is not required. *Automated Med. Labs*, 629 F.2d at 1122 (citing Fed. R. Civ. P. 8(f)). Accordingly, where the matter is raised in a manner that does not result in unfair surprise, technical failure to comply precisely with Rule 8(c) is excusable. *Mackay*, 695 F.2d at 855–56 (citing *Jones v. Miles*, 656 F.2d 103, 107 n.7 (5th Cir. 1981)).

Although Rule 8(c) is somewhat forgiving, it is not nearly as elastic as STGC and STC suggest. A closer reading of the cited cases indicates that in each one the contested affirmative defense was supported by the record or was clearly at issue early on in the litigation. In *Standard Waste System Ltd. v. Mid-Continent Casualty Co.*, 612 F.3d 394, 398 (5th Cir. 2010), the Fifth Circuit concluded that the defendant insurers did not waive their affirmative defense even though it was not expressly mentioned in their answer because there was no unfair surprise or prejudice to plaintiff. The Court's determination was based on the fact that "[t]he only issue in th[e] case has been the applicability of the pollution exclusion." *Id.* Indeed, the Court reasoned there was no surprise or prejudice because the defendant insurers (1) expressly stated the pollution exclusion barred any duty to defend plaintiff in the underlying suit in their denial letters, (2) stated that coverage was barred by the pollution exclusion in the joint status report, and (3)

attested that their expert would testify about the applicability of the pollution exclusion in their designation of expert witnesses. *Id.* Moreover, plaintiff's allegations were centered on the exclusion from the inception of the suit. *Id.*

Similarly, in *Rogers v. McDorman*, 521 F.3d 381, 386 (5th Cir. 2008), the Court found that defendants did not waive their in-pari-delicto affirmative defense because "[t]heir answers specifically raised Directors' conduct as an affirmative defense." *Id.* Accordingly, "[f]rom the beginning, Directors knew that Defendants contended that they were involved in the scheme and their participation contributed to MNB's losses—in other words, that their conduct would form a basis of Defendants' defense." *Id.* As additional support for the Court's conclusion that there was no unfair surprise or prejudice to plaintiff, the Court pointed to the fact that "Directors knew that in pari delicto itself was at issue, as they contested its applicability in a pretrial brief." *Id.*

Finally, in *United Transportation Union v. Florida East Coast Railway Co.*, 586 F.2d 520, 527 (5th Cir. 1978) (per curiam), the Court concluded that defendant had not waived its statute-of-limitations affirmative defense because "the bar of the statute of limitations has been asserted on five separate occasions," beginning with a motion to dismiss. *Id.* Thus, the defense was at issue from the beginning of the case. *Id.*

Unlike the early notice that plaintiffs received of the affirmative defenses raised in the cases cited by STGC and STC, the statute of frauds was not raised early on in this case. Nor is its late assertion supported by the record. STLA filed its Answer, Counterclaim, and Third-Party Complaint, in which it first asserted its promissory-estoppel claim, on November 13, 2012. Doc. 3. On December 31, 2012, STGC filed its 12(b)(6) Motion to Dismiss and Answer—neither of which raised the statute of frauds as an affirmative defense to STLA's promissory-estoppel claim. Docs. 13, 14. In spite of all the intervening motion practice, it was not until years later that

STGC and STC raised the statute of frauds as an affirmative defense in their Motion for Summary Judgment on STLA's Counterclaims, filed on April 29, 2016. Doc. 74. Under these circumstances, the Court cannot conclude that STLA had fair notice and finds that STGC and STC have waived the defense. *See United McGill Corp. v. Gerngross Corp.*, 689 F.2d 52, 54 (3d Cir. 1982) ("Federal Rule of Civil Procedure 8(c) requires that a defense such as the statute of frauds be pleaded affirmatively to give fair notice to the plaintiff and trial court. When, as here, the defense is first raised in [defendant's] brief and the record does not clearly support such a claim, [defendant] cannot claim that [plaintiff's] failure to satisfy the dictates of the statute of frauds justifies a [ruling in his favor].").

### 3.   Governed by Written Contracts

Finally, STGC and STC argue that the purported promise to grant a perpetual right is expressly governed by the written agreements among the parties. Doc. 74 at 27–31. Specifically, STGC and STC point to a provision in the Underwriting Agreements that limits the term of use to 20 years, "unless otherwise agreed in writing by both parties" and allows for early termination in accordance with other provisions contained in the agreement. *Id.* at 29 (citing Docs. 74-5 at 7, 74-12 at 6, 74-15 at 6, 74-17 at 6). STGC and STC also direct the Court's attention to the License Agreement, which contains a provision granting a perpetual right to the trademark but makes it subject to a number of restrictions and allows for early termination if STLA violates any one of a number of outlined terms. *Id.* at 29–30 (citing Doc. 74-19 at 1, 3–4). STGC and STC further urge that because the License Agreement contains a provision stating that it can only be modified by a written instrument and the alleged promise is subject to the statute of frauds, any modification to the term must have been in writing to be binding. *Id.* As additional support for their argument that the written agreements bar STLA's claim, STGC and STC point out that the

License Agreement also contains an integration clause, meaning that any alleged oral promises addressing the same subject matter were superseded by it. *Id.* at 30–31.

STLA responds that the alleged promise of a perpetual license is not barred by any contract because the promise was extracontractual. Doc. 76 at 29–31. With respect to the Underwriting Agreements, STLA argues that the only amendment required to be in writing was a change to the 20-year term of the contract. *Id.* at 30. The right to use the Stewart trademark was not encompassed by this requirement. *Id.* Alternatively, STLA contends that even if all modifications were required to be in writing, the promise of a perpetual license was referenced in the First Addendum, which was "specifically intended to supersede the prior underwriting agreement and extend the license into perpetuity." *Id.* at 31. Therefore, STLA continues, this written reference would satisfy that requirement. *Id.*

A plaintiff cannot recover under promissory estoppel if a valid contract exists between the parties and covers the alleged promise. *Harris Const. Co. v. GGP-Bridgeland, LP*, 698 F. Supp. 2d 723, 726 (S.D. Tex. 2010) (citing *Fertic v. Spencer*, 247 S.W.3d 242, 250 (Tex. App.—El Paso 2007, pet. denied); *El Paso Healthcare Sys. Ltd. v. Piping Rock Corp.*, 939 S.W.2d 695, 699 (Tex. App.—El Paso 1997, writ denied)). Rather, if a valid contract exists, the injured party must seek damages under the contract. *Id.* (citing *El Paso Healthcare*, 939 S.W.2d at 699). Thus, the dispositive question is whether the contracts among the parties cover the alleged promise to grant a perpetual license.

To begin, the Court reiterates that STLA brings its claims against both STGC and STC without differentiating between the two distinct entities or the agreements that each executed with STLA. This Court has already concluded that one of these agreements, the Formation Agreement (and related First Addendum) between STC and STLA is not a grant of a perpetual

license. Doc. 56 at 4. Rather, "[t]he Formation Agreement provides that licensing will be governed by agreements between STGC and STLA." *Id.* It thus follows that STC's alleged promise of a perpetual license is not covered by the Formation Agreement. Nor could it be. As this Court has already recognized, it is undisputed that STGC owns the trademarks at issue. Doc. 56 at 4 n.3.

Unlike the Formation Agreement, the License Agreement between STGC and STLA does cover the alleged promise. In that agreement, STGC explicitly grants STLA a perpetual license to its trademarks, but makes that license subject to additional terms and conditions. *See* Doc. 74-19 at 1. ("[T]his AGREEMENT shall be in full force and effect *perpetually so long as* LICENSEE complies with the terms and conditions stated in this AGREEMENT, unless otherwise agreed to in writing by both parties, and subject to COMPANY'S right to revoke the AGREEMENT sooner in accordance with the terms and provisions hereof." (emphasis added)). Moreover, as STGC and STC point out, the License Agreement also contains an integration clause that clearly states it supersedes all prior agreements between the parties, oral or written, and requires all modification of contract terms to be in writing. *See id.* at 6–7. In light of these facts, the Court concludes that STLA's promissory-estoppel claim is barred.

### C.     Breach of Fiduciary Duty and Conspiracy

The parties agree that British Virgin Island ("BVI") law controls STLA's breach-of-fiduciary-duty claims. Docs. 70 at 12, 76 at 33. STGC and Third-Party Defendants Skalka, Craig, and STC (collectively "Counter-Defendants") ask the Court to take judicial notice of excerpts from the BVI Business Companies Act of 2004 ("BCA") (attached to the declaration of Andrew Jan Willins, Doc. 70-32). Docs. 69, 81. Under Federal Rule of Civil Procedure 44.1, when the parties have given written notice of intent to raise an issue of foreign law, a federal court may

take judicial notice of the laws of a foreign country. Accordingly, the Court takes judicial notice of the excerpts from the BVI BCA. Along with the BVI BCA excerpts, Counter-Defendants present two declarations of Andrew Jan Willins, a partner and local practice group head with the dispute resolution team at Appleby, a law firm in the BVI. In his declarations, Willins applies BVI law to the facts of this case and provides his legal conclusions with supporting authority. *See* Docs. 70-32, 82-3.

Counter-Defendants initiate a four-pronged attack on STLA's breach-of-fiduciary-duty claim. First, they allege that Craig could not have breached any fiduciary duty to STLA because most or all of the allegations against him relate to events that occurred before he joined the board and BVI law only imposes fiduciary duties on a director after he assumes his position. Doc. 70 at 13–14. Counter-Defendants next argue that STLA's claims fail because the allegations relate to Craig and Skalka's duties as STGC employees, not STLA board members. Doc. 70 at 14. Counter-Defendants contend that STLA has no evidence that Skalka and Craig did anything as STLA directors that violated their fiduciary duties to STLA because at all times STLA was aware of Craig and Skalka's relationship with STGC, and STLA admits knowing of no wrongful disclosure of STLA information received by Skalka or Craig. Doc. 70 at 14–15. Third, pointing to deposition testimony in support, Counter-Defendants urge that STLA has no evidence that Skalka or Craig improperly disclosed confidential information about STLA to anyone. *Id.* at 15–16. Finally, Counter-Defendants claim that STLA's claim is foreclosed because it has no evidence of any damages caused by Skalka and Craig. *Id.* at 17.

In its Response, STLA argues that Counter-Defendants "mischaracterize STLA's breach of fiduciary duty claim by framing it solely around the duty of confidentiality." Doc. 76 at 34. STLA insists that its claim is instead "based first and foremost on Craig and Skalka's 'duties to

act in good faith, honestly, for a proper purpose, and in the best interests of STLA.'" *Id.* STLA goes on to recite a litany of alleged misdeeds by Craig and Skalka that it asserts violated this duty of good faith and honesty. *See id.* Nowhere, however, does STLA attempt to rebut Willins's legal assertions by pointing the Court to contrary authority to support its proposition that Craig and Skalka's actions violated their fiduciary duties as directors under BVI law. Accordingly, the Court is entitled to rely on Counter-Defendants' evidence regarding BVI law. *See, e.g.*, *McGee v. Arkel Int'l, LLC*, 671 F.3d 539, 547 (5th Cir. 2012) (accepting plaintiff's version of foreign law because defendant failed to put forth an alternative translation or suggest how the plaintiff's version was inaccurate); *Northrop Grumman Ship Sys., Inc. v. Ministry of Def. of Republic of Venezuela*, 575 F.3d 491, 498 (5th Cir. 2009) (finding defendant's submissions regarding foreign law were sufficient proof of the content of Venezuelan law because plaintiff failed to allege the submissions were inaccurate or misrepresented the law).

Section 120(1) of the BVI BCA codifies directors' fiduciary duties: "in exercising his powers or performing his duties, [a director] shall act honestly and in good faith and in what the director believes to be in the best interests of the company." Doc. 70-32 at 21. Section 124 recognizes that a director may hold office in circumstances where a conflict of interest exists without breaching his fiduciary duties by requiring the director to disclose his interest. *Id.* at 22–23. Furthermore, the BCA imposes no specific duty of confidentiality on directors of a BVI corporation. *Id.* at 7; *See id.* at 19–24. Rather, a director's duty to keep information confidential is governed by his contractual obligations and his duty of "good faith" to the company. *Id.* at 7. Finally, except in very limited circumstances, a company has no interest in the identities of its shareholders under BVI law and shareholders owe no fiduciary duties to one another. Doc. 82-3 at 4.

20 / 26

Here, the record confirms that Craig did not join the STLA board until February 2010. Doc. 70-24 at 7. Accordingly, under BVI law he could not have breached any fiduciary duty to STLA for his alleged role in the September 2008 and April 2009 "hostile" takeover attempts. *See* Doc. 70-32 at 7. Nor, under BVI law, did Craig and Skalka have a legal duty to inform STLA of the fact that STC was negotiating to acquire the shares fellow shareholder HSBC held in STLA. Doc. 82-3 at 2–3, 4–5.

Furthermore, the record demonstrates that STLA was aware at all times that Craig and Skalka were STGC employees. Doc. 70-29 at 4–5. As a result, any potential conflict of interest was disclosed to STLA. To the extent confidential disclosures were made to Craig and Skalka in their capacity as STLA directors, their only obligation to keep that information secret would arise from contractual obligations and their duties to STLA and their principals, not the BVI BCA. Doc. 70-32 at 7. Nevertheless, there is no evidence that they disclosed confidential information to anyone in their roles as STLA directors. Doc. 70-29 at 4, 6. Indeed, under Section 100 of the BVI BCA, all directors of STLA were entitled to see the "confidential information about STLA's cash flow and escrow accounts" that STLA alleges Craig and Skalka wrongly disclosed. Doc. 70-32 at 9. Moreover, this information was regularly disclosed to the STGC accounting department by STLA itself. Doc. 70-29 at 6. Accordingly, any repeat disclosure of this information by Skalka and Craig would not be an actionable disclosure under BVI law. Doc. 70-32 at 11.

With regard to STLA's claims that Craig and Skalka's efforts to initiate an audit of STLA breached the duty of good faith, both Skalka and Craig served as officers for STGC when the STLA audits commenced. *See* Docs. 76 at 17–18, 82 at 7. Under the express terms of the Underwriting Agreements, STGC had a contractual right to audit STLA, Doc. 76-16 at 4, 8, and

BVI law does not recognize any restriction on a director that would prevent STGC, through its officers, from enforcing that right, Doc. 82-3 at 3. As a result, under BVI law, Skalka and Craig cannot be liable for either initiating or participating in the audit.

In light of BVI law and the facts contained in the record, the Court concludes that STLA has failed to meet its burden as the nonmovant and summary judgment is warranted on its breach-of-fiduciary-duty claim against Skalka and Craig. Because conspiracy is a derivative tort, its conspiracy claim must also be dismissed. *See Ernst & Young, LLP v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 582–83 (Tex. 2001) (noting that because a conspiracy claim is predicated on an underlying tort, a grant of summary judgment on the underlying tort mandates summary judgment against the claimant on the conspiracy claim).

### D.        Declaratory Judgment

In its Partial Motion for Summary Judgment on its Affirmative Claims, STGC seeks a declaration that it terminated the Underwriting and License Agreements in accordance with contractual terms.  Doc. 71. As already recited in the context of the breach-of-contract claim, STLA responds that summary judgment is inappropriate because "the record includes ample evidence that STG/STC terminated these contracts under false pretenses to achieve the new management's strategic shift to cut ties with STLA and take the Latin American market for itself." Doc. 76 at 21.

"When a declaratory judgment action is filed in state court and later removed to federal court, as in this case, it is converted to one brought under the federal Declaratory Judgment Act." *Callan v. Deutsche Bank Trust Co. Americas*, 11 F. Supp. 3d 761, 771 (S.D. Tex. 2014), *amended*, 93 F. Supp. 3d 725 (S.D. Tex. 2015) (citing 28 U.S.C. §§ 2201, 2202). The Declaratory Judgment Act requires a justiciable controversy and "authorizes the federal courts to

'declare the rights and other legal relations of any interested party seeking such declaration.'" *Val–Com Acquisitions Trust v. Chase Home Fin., LLC*, 428 Fed. App'x 364, 365 (5th Cir. 2011). "The declaratory judgment is not itself a cause of action, only a form of relief the court may grant." *Conrad v. SIB Mortg. Corp.*, 2015 WL 1026159, at *7 (N.D. Tex. Mar. 6, 2015), *appeal dismissed*, (Oct. 8, 2015) (citing *Collin Cnty. v. Homeowners Ass'n for Values Essential to Neighborhoods*, 915 F.2d 167, 171 (5th Cir. 1990)).

The parties do not dispute that there is a justiciable controversy, thus the Court must determine whether to "declare the rights" of STGC. As already discussed in the context of STGC and STC's Motion for Summary Judgment on STLA's Counterclaims, the Court finds that STGC terminated the Underwriting Agreement in accordance with the contractual terms. *See supra* Section III.A.2. Although the terms of the License Agreement vary slightly, it too contains provisions allowing STGC to terminate the agreement if STLA fails to comply with any of the terms and conditions of the Agreement. *See* Doc. 74-19. STGC invokes four of these termination provisions in support:

> (a) Any use of the Trademark that is not within the scope of the described Business Purpose; . . .
> (e) Any notice or information of any act by [STLA-Mexico] of apparent fraud or dishonesty;
> (f) Any unlawful or inappropriate use of the Trademarks as determined in the sole discretion of [STGC]; and . . .
> (j) Any breach of this AGREEMENT by [STLA-Mexico].

Doc. 74-19 at 3–4. STGC also cites three additional requirements of the License Agreement that it alleges STLA violated:

> (1) "[STLA-Mexico] shall conduct its business in a sound and ethical manner, and shall use the Trademark with the appropriate registration mark and in accordance with the guidelines and permitted use authorized by [STGC] . . . ."
>
> (2) "Any use of the Trademark for business purposes, advertisement or any other purpose must be approved in writing by [STGC] prior to such usage;"

(3) Subsequent to termination or cancellation of this AGREEMENT: (a) [STLA-Mexico] shall cease and discontinue use of the Trademark; . . . shall cease the use and/or display of the Trademark, or hold itself out to advertise itself using the Trademark; and . . . shall deliver to [STGC] all material in its possession or control containing the Trademark."

*Id.* at 2, 5. Notably, these provisions largely mirror those STGC relied on in terminating the Underwriting Agreements. Most importantly, the License Agreement also contains a "sole discretion" provision. For the same reasons already outlined in Section III.A.2., the Court finds that STGC terminated the License Agreement in accordance with the contractual terms.

### E.      Injunctive Relief

STGC also seeks a permanent injunction against Defendants' continued unauthorized use of the Stewart trademarks. Doc. 71. STGC points out that the agreements between the parties required STLA and its affiliates to cease the use or display of the Stewart trademarks and name after termination. *Id.* at 14. In its termination notices, STGC reminded STLA of these provisions but—as admitted by STLA general manager Chris Hill—STLA continues to use the Stewart trademarks, including on the Stewart Title Latin America website. *Id.* at 15. STGC contends that this continued use causes confusion in the marketplace and "regularly requires significant time and attention by STGC employees in responding to customers who are dissatisfied with STLA's services." *Id.* at 17. Adding further confusion to the situation, STGC alleges that STLA sold title insurance underwritten by STGC's competitors using the Stewart name—another fact admitted by Hill in his deposition. *Id.* at 19 (citing Doc. 74-42 at 6).

To be entitled to a permanent injunction, the plaintiff must plead and prove (1) a wrongful act, (2) imminent harm, (3) irreparable injury, and (4) absence of an adequate remedy at law. *In re Hardwick*, 426 S.W.3d 151, 159 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (citing *Indian Beach Prop. Owners Ass'n v. Linden*, 222 S.W.3d 682, 690 (Tex. App.—Houston

[1st Dist.] 2007, no pet.)). "The purpose of an injunction is to prevent ongoing or imminent injuries." *Id.* (citing *Whitaker v. Dillard*, 16 S.W. 1084, 1085 (Tex. 1891); *Wiese v. Heathlake Cmty. Ass'n, Inc.*, 384 S.W.3d 395, 399 (Tex. App.—Houston [14th Dist.] 2012, no pet.) Because an injunction is an equitable remedy, a trial court must also weigh the respective conveniences and hardships of the parties and balance the equities. *Pondersosa Pine Energy, LLC v. Illinova Generating Co.*, 05-15-00339-CV, 2016 WL 3902559, at *9 (Tex. App.—Dallas July 14, 2016), *reh'g overruled*, (Aug. 18, 2016) (citing *Noell v. City of Carrollton*, 431 S.W.3d 682, 712 (Tex. App.—Dallas 2014, pet. denied)).

"'When a likelihood of confusion exists, the plaintiff's lack of control over the quality of the defendant's goods or services constitutes an immediate and irreparable injury, regardless of the actual quality of those goods or services.'" *Choice Hotels Int'l, Inc. v. Patel*, 940 F. Supp. 2d 532, 542 (S.D. Tex. 2013) (quoting *Quantum Fitness Corp. v. Quantum LifeStyle Ctrs., LLC*, 83 F. Supp. 2d 810, 831 (S.D. Tex. 1999)). Loss of control also demonstrates that money damages cannot adequately compensate for the unauthorized use of the marks. *Id.* at 543 (citing *S & H Indus., Inc. v. Selander*, 932 F. Supp. 2d 754, 764–65, No. 3:11–CV–2988–M–BH, 2013 WL 1131077, at *8 (N.D. Tex. Mar. 19, 2013)). Finally, in cases such as this, where confusion exists because of concurrent use of a trademark, a permanent injunction serves the public interest by protecting consumers from deception or confusion. *See S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 379 (3d Cir. 1992) ("Where a likelihood of confusion arises out of the concurrent use of a trademark, the infringer's use damages the public interest."); *Ramada Franchise Sys., Inc. v. Jacobcart, Inc.*, CIVA 3:01CV0306D, 2001 WL 540213, at *3 (N.D. Tex. May 17, 2001) (noting that the public interest "promotes the protection of valuable trademarks and service marks in a capital-based economy that rewards success through competition."). Based on the

record, the Court concludes that an injunction is warranted in this case.

## IV. Conclusion

In light of the foregoing, it is hereby

**ORDERED** that (1) Skala and Craig's Motion for Summary Judgment, Doc. 70; (2) STGC's

Motion for Partial Summary Judgment on its Affirmative Claims, Doc. 71; and (3) STGC and

STC's Motion for Summary Judgment on STLA's Counterclaims, Doc. 74, are **GRANTED**.

SIGNED at Houston, Texas, this 21st day of March, 2017.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE